## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

| | |
|---|---|
| **JANET McINTOSH and ASHLEY BAKER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action, Case No.:**  5:21-cv-67-TBR |
| **v.** ) | |
| ) | **JURY DEMAND** |
| **LOUIS DeJOY, POSTMASTER GENERAL,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COME NOW the Plaintiffs, Janet McIntosh and Ashley Baker, by and through their undersigned counsel, and for their Complaint state as follows:

### NATURE OF THE COMPLAINT

1.      This is a civil action arising under the laws of the United States, and is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, and the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*

### THE PARTIES

2.      Ms. McIntosh is a resident of Massac County, Illinois.  Ms. McIntosh was, at all relevant times, an employee of Defendant United States Postal Service.

3.      Ms. Baker is a resident of McCracken County, Kentucky.  Ms. Baker was, at all relevant times, an employee of Defendant United States Postal Service.

4.      Defendant United States Postal Service is an agency of the United States government with its principal office at 475 L'Enfant Plaza, SW, Room 4012 Washington, DC  20260-2200.  Pursuant to Fed. R. Civ. P. 4(i)(1), its registered agent for service

of process is Postmaster General Louis DeJoy, who may be served at 475 L'Enfant Plaza, SW, Room 4012 Washington, DC 20260-2200; as well as the Attorney General of the United States, who may be served at the U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC  20530-0001; and the United States Attorney's Office, Western District of Kentucky, 717 West Broadway, Louisville, KY  40202.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over Plaintiffs' federal claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, because they raise federal questions pursuant to 28 U.S.C. § 1331.  The Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a)

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to this lawsuit occurred in this judicial district and Defendant conducts business and employed Plaintiffs in McCracken County, Kentucky, which is located within this judicial district.

7.    Plaintiffs filed timely charges of discrimination with Defendant's Equal Employment Opportunity office regarding their claims.  Ms. McIntosh and Ms. Baker each received a Final Agency Decision with respect to their charges set forth below less than ninety days prior to the filing of this Complaint, copies of the service pages for which are attached hereto as Exhibit A and Exhibit B, respectively.

## FACTUAL BACKGROUND

8.    Defendant operates the system of postal offices and mail authorized by the postal clause of the United States Constitution.

9.    Ms. McIntosh has been employed by Defendant for approximately eight years, including approximately four years as a City Carrier in Paducah, Kentucky.

10.    Ms. McIntosh performed her job competently at all times.

11.    Ms. Baker is employed by Defendant as a Rural Carrier in Paducah, Kentucky.

12.    Ms. Baker performed her job competently at all times.

13.    Plaintiffs' primary work location is the Paducah Carrier Annex where they prepare their mail for delivery in association with other coworkers, including Patrick Carbonel.

14.    Plaintiffs have been, at all relevant times, subject to the supervision of Postmaster Todd Hawks.

15.    In or about December 2019, Postmaster Hawks told Ms. Baker that, during an argument with Mr. Carbonel earlier in the day, Mr. Carbonel said he "knew" that Mr. Hawks was having affairs with Ms. Baker, Ms. McIntosh, and a third female employee.  Since the allegation was untrue, Ms. Baker believed the situation would dissipate if left alone so she took no additional action at that time.

16.    After the Governor issued an emergency shutdown order due to the COVID-19 pandemic, however, Mr. Carbonel's behavior became much more erratic, including staring at Plaintiffs, following them through the Carrier Annex, and, on one occasion, making a video recording in violation of Defendant's policy and posting it to YouTube.

17.    Plaintiffs complained about this behavior, but Postmaster Hawks said not to worry about it.

18.    On or about April 14, 2020, as Ms. McIntosh parked her truck at the dock after successfully avoiding Mr. Carbonel for a while, she found Mr. Carbonel standing at the dock waiting for her in an intimidating manner.  Ms. McIntosh waited until he had left to go the

timeclock where no one was around but, as she clocked out, Mr. Carbonel suddenly appeared and asked directly into her ear "leaving early?"  She quickly moved toward the parking lot but, as she got in her vehicle to leave, she saw Mr. Carbonel in Postmaster Hawks' office knocking on the window and waving at her.

19.     The same day, Postmaster Hawks called Ms. Baker and disclosed that Mr. Carbonel had called him and asked "which one are you sticking your penis in today?," which Ms. Baker then passed on to Ms. McIntosh by separate phone call.

20.     When Ms. McIntosh arrived for work the next day, on April 15, 2020, she told her supervisor that she needed to file a complaint about the situation with Mr. Carbonel, but her supervisor directed her to Postmaster Hawks, who told her that he was aware of the situation and not to worry about it.  Defendant did not remove Mr. Carbonel from the facility for investigation in accord with its policy or otherwise take any action against him.

21.     Throughout this first quarter of 2020, Mr. Carbonel had walked around the Carrier Annex staring at Plaintiffs, taking pictures of them, and "documenting" their whereabouts and his perceptions on his cellphone.

22.     On or about April 17, 2020, Postmaster Hawks separately called each Plaintiff along with a third female employee and told them that his wife had received a package at their home falsely telling her that Postmaster Hawks was having sexual affairs with each of them, including pictures of and contact information for all three women.

23.     Upon information and belief, Mr. Carbonel sent the package as it included information that could only have come from him.

24.     On April 26, 2020, Ms. McIntosh's husband received messages to his YouTube channel from a "John Denver" asking things such as "should the postmaster be touching your

wife?," leading her husband to email with "John Denver," who provided very specific location information for Plaintiffs that could only have come from Mr. Carbonel.

25.    Mr. Carbonel had access to all routes and location information for Plaintiffs, resulting in significant fear as they tried to perform their jobs.

26.    Plaintiffs made complaints following the proper chain of command regarding each incident of improper behavior by Mr. Carbonel and of Postmaster Hawks' failure to take any remedial action.

27.    Plaintiffs took part in interviews by other offices, such as the Labor Relations department, but Defendant never took any action against Mr. Carbonel to stop his harassing behavior.

28.    Instead, Plaintiffs faced inferior working conditions after they spoke to individuals outside the Carrier Annex, including the loss of days off.

29.    Defendant's treatment of Plaintiffs was because of their sex and because of their opposition to being subjected to sex-based mistreatment as a condition of employment.

30.    The actions of Defendant complained of herein were intentional, willful, deliberate, knowing, and malicious.

31.    As a direct, foreseeable, and proximate result of Defendant's wrongful actions, Plaintiffs have suffered pecuniary losses in the form of lost income and lost employment benefits as well as severe emotional distress, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses, all in an amount to be determined at trial.

## COUNT I

## SEXUAL HARASSMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT

### Hostile Work Environment

32.     Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 – 31.

33.     Defendant's actions alleged herein constitute discrimination or harassment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

34.     Defendant's actions created an unwelcome and hostile working environment for Plaintiffs.

35.     Defendant failed to take any corrective action to protect Plaintiffs and to prevent a hostile working environment.

36.     Plaintiffs' sex was a motivating factor in Defendant's adverse treatment of them.

37.     Defendant's actions on the basis of Plaintiffs' sex were willful and knowingly committed.

38.     As a direct and proximate result of Defendant's adverse treatment of Plaintiffs in violation of the Title VII of the Civil Rights Act of 1964, Plaintiffs were injured and suffered damages.

39.     Plaintiffs sustained a loss of back pay, benefits, incidental expenses, and front pay.

40.     Defendant engaged in the discriminatory practices alleged in the first cause of action with malice and/or with reckless indifference to Plaintiffs' federally protected rights, making Defendant liable for compensatory damages pursuant to 42 U.S.C. §§ 1981a(a) & (b).

## COUNT II

### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

41.    Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 – 40.

42.    Defendant's conduct constitutes illegal retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

43.    Plaintiffs have sustained a loss of back pay, benefits, incidental expenses, and front pay.

44.    Defendant engaged in the discriminatory practices alleged in the second cause of action with malice and/or with reckless indifference to Plaintiffs' federally protected rights, making Defendant liable for compensatory damages pursuant to 42 U.S.C. §§ 1981a(a) & (b).

## COUNT III

### SEX DISCRIMINATION AND RETALIATION IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT

45.    Plaintiffs reallege and incorporate herein the allegations contained in Paragraphs 1 – 44.

46.    Defendant's conduct constitutes illegal sex discrimination and retaliation in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*

47.    As a result of Defendant's conduct, Plaintiffs suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray as follows:

1.    That Defendant be served and required to answer within the time prescribed by law;

2.    That a jury of eight try this cause;

7

3.      That, upon the trial of this matter, Plaintiffs be awarded judgment for damages of the lost compensation they suffered from the date of Defendant's unlawful actions in an amount to be proven at trial;

4.      That Plaintiffs be awarded additional compensatory damages, including, but not limited to, damages for emotional distress, pain and suffering, embarrassment, and humiliation, in an amount to be proven at trial;

5.      That costs and attorneys' fees be assessed against Defendant pursuant to 42 U.S.C. § 2000e-5(k);

6.      That costs and discretionary costs be taxed against Defendant;

7.      That pre-Judgment and post-Judgment interest be assessed against Defendant, as provided by law;

8.      That such other remedies as shall be necessary and proper to eliminate all violations complained of herein be awarded as provided by law; and

9.      For such other and further relief as the Court may find appropriate.

Respectfully Submitted,

 s/ D. Wes Sullenger
D. Wes Sullenger, KY BAR # 91861
                 TN BPR # 021714
                 IL ARDC # 6322019

Sullenger Law Office, PLLC
629 Washington Street
Paducah, KY  42003
Voice: (270) 443-9401

wes@sullengerfirm.com

*Attorney for the Plaintiffs,*
*Janet McIntosh and Ashley Baker*